IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 07-00170-01-CR-W-SOW |
| CORTEZ L. WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE

Before the court is a motion to suppress evidence filed by defendant Cortez Williams on the ground that the protective sweep was pretexual since officers had entered the home and searched it with a mirror on a stick. I find that (1) investigators were authorized to enter the residence because (a) they had a valid arrest warrant for defendant, (b) they had a reasonable belief that defendant resided at the residence, and (c) they had reason to believe that defendant was present at the time the warrant was executed; (2) investigators were authorized to conduct a protective sweep of the residence because they had a reasonable suspicion that accomplices could pose a threat to their safety; and (3) investigators were authorized to seize the firearm because (a) they were lawfully present when they observed the firearm, and (b) they had probable cause to suspect that the firearm was connected to criminal activity. Therefore, defendant's motion to suppress should be denied.

## I. BACKGROUND

On July 26, 2006, investigators went to a residence to execute an arrest warrant. Having received a tip that defendant lived there, and seeing him attempt to flee out the back door, investigators entered the residence and placed defendant under arrest. During a protective sweep of the residence, they observed a firearm, which was seized.

On May 9, 2007, an indictment was returned charging defendant with one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant filed a motion to suppress all evidence and testimony related to the firearm (document number 20). On August 7, 2007, the government filed a response in opposition to defendant's motion (document number 22).

On August 14, 2007, I held an evidentiary hearing on defendant's motion to suppress evidence. The government appeared by Assistant United States Attorney Bruce Clark. The defendant was present, represented by Federal Public Defender Ray Conrad. The following witnesses testified:

1. Michael Blegen, Investigator with Missouri Department of Corrections
2. Chad Obersteadt, Investigator with Missouri Department of Probation and Parole
3. Detective John Cooley, Kansas City, Missouri, Police Department

2

In addition, the following exhibits were admitted:

P. Ex. 1   Copy of photograph of book case with gun on top

P. Ex. 2   Copy of photograph of gun on top of book case

P. Ex. 3   Copy of photograph of gun

P. Ex. 4   Copy of photograph of family pictures on book shelf

## II.  EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1.   In July 2006, defendant had an active parole violator's warrant (Tr. at 10).  Investigator Michael Blegen, with Missouri Department of Corrections, assigned to the FBI Violent Crimes Task Force, received a tip that defendant was staying at a house on Norton and that he was making threats of burning houses down on Norton (Tr. at 4).  Investigators knew defendant had been arrested and placed on a 20-hour hold on January 9, 2004, for being a felon in possession of a firearm (Tr. at 4). Investigator Blegen and other officers went to that residence, but defendant was not there.

2.   Later, Investigator Blegen received another tip through the TIPS Hotline that defendant was staying at 8014 Manning in Raytown (Tr. at 4, 9).  On the morning of July 26, 2006, Investigator Blegen and five other officers went to the Manning residence (Tr. at 4, 9).  Some of the officers went to the front, others covered the back, and they had their guns drawn (Tr. at 4,

3

5, 44). Investigator Blegen went to the front door, knocked several times, and announced "Police!" (Tr. at 5). A young child (about seven or eight years old) came to the door, looked out the door's window, unlocked the door, and walked away (Tr. at 5, 10). The child did not open the door (Tr. at 10). Investigator Blegen heard the child calling out to "Mom and Dad" (Tr. at 5). Blegen continued to announce "Police!" (Tr. at 5). Because the child had unlocked the door, Blegen opened the door and continued to yell "Police!" (Tr. at 5, 11).

    3.    Detective Cooley was one of the officers who had gone to the back of the house (Tr. at 43). When Investigator Blegen began knocking on the front door and announcing "police", Detective Cooley observed defendant step out of the back door as if to exit, and he immediately made a u-turn to go back inside (Tr. at 44). As defendant was turning to re-enter the residence, Detective Cooley began to announce "Police!" and shouted for defendant to stop (Tr. at 44). Defendant locked the door behind him after he re-entered the house (Tr. at 44). Investigator Blegen heard the officers in the back shout that someone matching defendant's description had tried to come out the back door, but then closed the door again upon seeing the police (Tr. at 5, 11). Investigator Blegen and the others in the front continued to call out to defendant and announce "Police!" (Tr. at 5). Defendant came to the front door where he was arrested in the living room

4

(Tr. at 5, 45). When defendant came to the front door, Investigator Blegen opened the door to make the arrest (Tr. at 11). He put handcuffs on defendant and asked if he was Cortez Williams, to which defendant replied, "yes" (Tr. at 11).

    4. Investigator Blegen stayed with defendant, putting him in handcuffs, while the other officers conducted a sweep search of the house to make sure there was no one there who would pose a threat to officer safety (Tr. at 6, 13, 23, 46). Police encountered Virginia Brown and the child (Tr. at 6). While conducting the sweep search, Office Obersteadt entered a bedroom and observed a black semi-automatic pistol on a bookshelf in a bedroom (Tr. at 6, 23). Investigator Obersteadt stayed in the room to guard the weapon until the rest of the house was secured (Tr. at 27, 30). The gun was eventually seized and DNA testing was later conducted (Tr. at 7). Defendant's DNA was found on the weapon (Tr. at 7).

    5. Once defendant was placed under arrest and handcuffed, he was removed from the house and placed in a vehicle (Tr. at 12). Investigator Blegen took a camera to the bedroom where the gun was found and he took pictures (Tr. at 15). Because Investigator Blegen is only 5'5" and Officer Obersteadt is 6' tall, Investigator Obersteadt took the pictures of the gun on top of the book case (Tr. at 20-21, 27).

5

6. Investigators have a mirror attached to a pole that is sometimes used to make sure there is no one hiding in an attic (Tr. at 19). No one used a mirror on a pole to attempt to see on top of the bookcase where the gun was found (Tr. at 20).

### *III. ENTRY INTO THE RESIDENCE*

A valid arrest warrant carries with it the implicit but limited authority to enter the residence of the person named in the warrant in order to execute that warrant. Payton v. New York, 445 U.S. 573, 603 (1980). However, an arrest warrant alone does not justify entry into a third person's home to search for the subject of the arrest warrant. Steagald v. United States, 451 U.S. 204, 215-16 (1981). Therefore, if the subject of an arrest warrant is a guest of the third party, then police must have a search warrant to enter the residence and execute the arrest warrant. United States v. Risse, 83 F.3d 212, 216 (8th Cir. 1996). But if the suspect is a co-resident of the third party, then the arrest warrant alone is enough for police to enter the residence. Id.

Under Payton, officers executing an arrest warrant must have a "reasonable belief" that the suspect resides at the place to be entered and also have reason to believe that the suspect is present at the time the warrant is executed. Id. The officers' assessment need not in fact be correct; rather, they need only "reasonably believe" that the suspect resides at the dwelling to

6

be searched and is currently present at the dwelling.  Id.

In this case, police had a tip from an anonymous source that defendant was living at the residence on Manning.  In addition, when they knocked on the door, they heard a child in the house calling for "Mom and Dad".  Based on these facts, police had a reasonable belief that defendant was residing at the home on Manning.  See United States v. Lauter, 57 F.3d 212, 215-16 (2nd Cir. 1995) (entry permissible when police received a tip that suspect was residing in new apartment).

In addition, police knew that defendant was home before they entered the residence.  Police observed defendant exit the back of the house and quickly re-enter upon seeing the police.  Therefore, I find that the investigators lawfully entered the residence to execute the arrest warrant.

## IV.  *SWEEP SEARCH OF HOUSE*

In Maryland v. Buie, 494 U.S. 325, 334 (1990), the Supreme Court held that incident to an arrest, officers may, as a precaution and without any requisite level of suspicion, "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched" without first securing a search warrant.  The Court also held that officers may sweep additional areas if "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing

7

that the area to be swept harbors an individual posing a danger to those on the arrest scene". Id. A "protective sweep" must be "a quick and limited search of premises . . . conducted to protect the safety of police officers or others." Id. at 327. It may only extend to a cursory inspection of those spaces where a person may be found and may last no longer than is necessary to dispel the reasonable suspicion of danger, and in any event, may last no longer than it takes to complete the arrest and depart the premises. Id. at 335-36. A protective sweep is justified by the threat of accomplices launching a surprise attack during an arrest and is particularly important during an in-home arrest due to the heightened potential for an ambush in unfamiliar surroundings. Id. at 333. A protective sweep may be executed after an arrest if there is a reasonable possibility that other persons may be present on the premises who pose a danger to the officers. United States v. Davis, 471 F.3d 938, 944 (8th Cir. 2006); United States v. Jones, 193 F.3d 948, 950 (8th Cir. 1999).

The protective sweep of the residence was justified by several articulable facts and resulting rational inferences that created a reasonable suspicion that accomplices could pose a threat to the safety of the arresting officers. These facts and inferences include: (1) the child who came to the door when police first knocked called out to "Mom and Dad", indicating that more than one adult was in the house with the child, (2) the

8

officers had prior information that defendant was threatening to burn down houses of his neighbors, (3) the officers knew that defendant had previously been arrested for possessing a firearm after having been convicted of a felony, and (4) officers observed defendant attempt to flee from police out the back door and therefore were aware that he wished to avoid capture. Therefore, the protective sweep of defendant's residence was proper.

## *V.    SEIZURE OF FIREARM*

Officers seized a firearm from the residence that was observed by the investigators during the protective sweep.

The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity.  Illinois v. Andreas, 463 U.S. 765, 771 (1983).  The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment -- or at least no search independent of the initial intrusion that gave the officers their vantage point. Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); Illinois v. Andreas, 463 U.S. at 771; Texas v.

9

Brown, 460 U.S. 730, 740 (1983). The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. Minnesota v. Dickerson, 508 U.S. at 375; Arizona v. Hicks, 480 U.S. 321, 326-327 (1987); Coolidge v. New Hampshire, 403 U.S. 443, 467-468 (1971) (opinion of Stewart, J.).

In this case, police were lawfully present in defendant's bedroom conducting a protective sweep of the residence when they observed the firearm sitting on top of a book shelf. They had probable cause to suspect that the firearm was connected with criminal activity, as they were present to execute an arrest warrant for a parole violation, and they knew that defendant had been arrested previously for possessing a firearm after having been convicted of a felony. Therefore, defendant's possession of the firearm was a crime.

Because investigators were lawfully present when they observed the firearm, and because they had probable cause to suspect that the firearm was connected to criminal activity, seizure of the firearm was proper under the plain view doctrine.

*VI. CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in sections III through V, I make the following

10

conclusions of law:

1. Investigators were authorized to enter the residence because (a) they had a valid arrest warrant for defendant, (b) they had a reasonable belief that defendant resided at the place to be entered, and (c) they had reason to believe that defendant was present at the time the warrant was executed.

2. Investigators were authorized to conduct a protective sweep of the residence because they had a reasonable suspicion that accomplices could pose a threat to their safety.

3. Investigators were authorized to seize the firearm because (a) they were lawfully present when they observed the firearm, and (b) they had probable cause to suspect that the firearm was connected to criminal activity.

Based on all of the above, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motions to suppress evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

/s/ *Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 29, 2007

11