IN THE UNITED STATES DISTRICT COURT FOR THE
                        WESTERN DISTRICT OF MISSOURI
                              WESTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
     v.                         )   Criminal Action No.
                                )   07-00170-01-CR-W-SOW
CORTEZ L. WILLIAMS,             )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO DESTRUCTION OF THE FIREARM

Before the court is defendant's motion to dismiss the indictment on the ground that on March 16, 2007, the Kansas City, Missouri, Police Department destroyed the firearm defendant is charged with unlawfully possessing, and the reports from the Crime Lab indicate that the firearm was not a working model. I find that (1) whether the gun was in working order at the time it was seized is not relevant, since evidence that it was designed to fire a projectile is sufficient to establish that it was a firearm, and (2) defendant is unable to establish (a) bad faith on the part of the government or (b) that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means, both required to establish a due process violation. Therefore, defendant's motion to dismiss the indictment should be denied.

## I.  BACKGROUND

On May 9, 2007, an indictment was returned charging defendant with one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On March 12, 2008, defendant filed a motion to dismiss the indictment based on destruction of the firearm (document number 58).  In support of his motion, defendant states in part as follows:

> Had the firearm not been destroyed, the defense would be able to demonstrate to the jury what the weapon looked like, what pieces were missing, and why it would not operate properly.  Defense counsel would be able to show the jury that it did not have a grip on one side, that the safety lever was missing, that there was no extractor to take the cases out of the firearm and demonstrate to the jury "stove piping" which jammed ths pistol repeatedly.  The defense would be able to show the jury what discharging cartridges from a pistol means by virtue of manually pulling the receiver back as had to be done by the technicians in the Kansas City, Missouri Crime Laboratory.
>
> With the destruction of the firearm the defense is unable to demonstrate to the jury the fact that this pistol did not work.  The inoperability of the pistol would have been presented to the jury and would be a very strong factor in the argument that defendant is not guilty of the charges.  Because defendant has been deprived of the opportunity to show the weapon to the jury and explain the basic inoperability of the weapon and the fact that parts are missing and the fact that it has to be manually operated and the fact that it jams after each test firing with a "stove pipe" the defendant will be denied due process at trial.

On March 14, 2008, the government filed a response in opposition to defendant's motion (document number 59) arguing

2

that because none of the firearm defects were a result of the manufacturer's design, the gun still qualifies as a firearm under the law because it was designed to fire a projectile.

## II. DEFINITION OF FIREARM

Title 18, United States Code, Section 921(a)(3) defines a "firearm" in four ways: "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device."  Because the definition uses the disjunctive term "or" instead of the conjunctive "and," a weapon only has to meet one of the four definitions to be a "firearm" under § 921(a)(3). Awad v. Gonzales, 494 F.3d 723, 726 (8th Cir. 2007), *petition for cert. filed* (Jan. 14, 2008)(No. 07-8819).  Section 921(a)(3) does not necessarily require that a gun be operable to be considered a firearm.  18 U.S.C. § 921(a)(3); United States v. Abdul-Aziz, 486 F.3d 471, 477 (8th Cir. 2007); United States v. York, 830 F.2d 885, 891 (8th Cir. 1987).  So long as the gun was "designed to" operate as a firearm, the definition is met.  United States v. Maddix, 96 F.3d 311, 316 (8th Cir. 1996) (device was still a firearm under the statute even though firearm would not operate without use of pliers, which defendant did not have).

3

In this case, defendant argues that the crime lab reports indicate that the gun did not operate properly, and had the gun not been destroyed, defendant could have argued that there are serious questions as to "whether this firearm will expel a projectile by the action of an explosion." However, as discussed above, the government is not required to prove that the firearm "would expel a projectile". It need only prove that the firearm was "designed" to fire a projectile. Defendant has not addressed this option or attempted to explain why such proof would not be sufficient.

Because defendant argues only that one of three possible definitions of firearm in § 921(a)(3)(A) may not apply in this case, his motion to dismiss should be denied on that basis.

### III. *BRADY VIOLATION*

Defendant argues that pursuant to Brady v. Maryland, 373 U.S. 83 (1963), he has a Fifth Amendment due process right to obtain from the prosecution evidence that is favorable to the defendant; and destruction of the firearm before his trial violated his due process rights. This argument is without merit.

In United States v. Farmer, 312 F.3d 933, 936 (8th Cir. 2002), Farmer raised the same issue. In rejecting Farmer's due process argument, the Eighth Circuit Court of Appeals wrote:

> To establish a Brady violation, the defendant must show the government suppressed evidence that was both favorable to the defense and material to the issue of guilt or punishment. Appellant claims that the gun is exculpatory

4

evidence for a number of reasons, most of which are without merit. One significant challenge raised by Farmer is the lack of fingerprinting conducted by the police on the gun. Without fingerprinting, Farmer alleges the government could not conclusively prove the firearm was his. Appellant successfully presented the fact that the gun had not been fingerprinted to the jury; yet, the jury found a link between Farmer and the firearm. We cannot conclude, therefore, that the government suppressed evidence that was favorable to the defendant and material to the issue of his guilt. There is no <u>Brady</u> violation.

The Court of Appeals was faced with the very same issue in <u>United States v. Aldaco</u>, 201 F.3d 979 (8th Cir. 2000). In that case, Aldaco pled guilty to state court charges of unlawfully using a weapon, and four years later Chicago police destroyed the gun. Four months after the gun was destroyed, a federal grand jury indicted Aldaco for being a felon in possession of a firearm. Aldaco contended that he was denied due process when the shotgun was destroyed before the gun could be tested for recent firing or fingerprints. The court rejected this argument.

> When, as in this case, the failure of the prosecution to preserve evidence is at issue, due process requires that the defendant demonstrate: 1) bad faith on the part of the government; 2) that the exculpatory value of the evidence was apparent before the evidence was destroyed; and 3) that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

<u>Id</u>. citing <u>United States v. Watts</u>, 29 F.3d 287, 289-90 (7th Cir. 1994).

In Aldaco, the court found that because the Chicago Police Department had destroyed the firearm and not the federal government, Aldaco could not establish bad faith on the part of

5

the federal government. The court also found that Aldaco had not established the third prong of the <u>Watts</u> test, i.e., that the evidence that might have been procured from the shotgun could not have been elicited from a different source.

> Aldaco overlooks the fact that there were three other individuals on the roof with him the night he was arrested who could have testified that Aldaco was not in possession of the 12-gauge Mossberg if that indeed had been the case. Therefore, because the evidence that may have been obtained from the shotgun was not of such a nature that Aldaco would be unable to obtain convincing evidence by any other means, he has failed to meet the third prong of the <u>Watts</u> test and his due process claims again fall short.

Without a firearm in evidence and even without expert opinions based on analysis of the firearm, lay testimony from eyewitnesses can be sufficient to support a finding that an object is, in fact, a firearm under § 921(a)(3)(A). <u>United States v. Dobbs</u>, 449 F.3d 904, 811 (8th Cir. 2006), <u>cert</u>. <u>denied</u>, 127 S. Ct. 994 (2007); <u>United States v. Counce</u>, 445 F.3d 1016, 1018 (8th Cir. 2006). <u>See</u>, <u>also</u> <u>United States v. Kirvan</u>, 997 F.2d 963, 966 (1st Cir. 1993) (collecting cases).

In this case, defendant admits that he has a firearms-evidence worksheet from the Kansas City, Missouri, Police Crime Laboratory which indicates that the safety lever was missing, the pistol was missing a left grip, there was no magazine submitted, the extractor was missing, and each of the test fires "stove piped" and had to be manually removed. His motion states, "[w]ith the information set forth in the two reports from the

6

Kansas City, Missouri, Police Crime Laboratory, it is clear that this firearm is not a working model." (emphasis added). Defendant, therefore, acknowledges that the reports can establish the very fact that he sought to make with the destroyed firearm[1]. In addition to the reports, defendant is able to obtain testimony from individuals at the crime lab who conducted the testing on the firearm prior to its destruction.

Because defendant is unable to establish bad faith on the part of the federal government since the city police destroyed the gun, and because defendant is unable to establish that the evidence was of such a nature that he would be unable to obtain comparable evidence by other reasonably available means, his motion to dismiss on this basis should be denied.

## IV. CONCLUSION

Based on all of the above, I find that (1) whether the gun was in working order at the time it was seized is not relevant, since evidence that it was designed to fire a projectile is sufficient to establish that it was a firearm, and (2) defendant is unable to establish two of the three factors required to find a due process violation based on destruction of the firearm.

---

[1] In addition, defendant has the option of using a replica firearm to "demonstrate to the jury what the weapon looked like." (Def. motion at p. 3). See United States v. Aldaco, 201 F.3d at 986 ("[W]e are convinced that the court did not err in allowing the government to use a replica of the destroyed shotgun as demonstrative evidence."

7

Therefore, it is

RECOMMENDED that the court, after an independent review of the pleadings and applicable law, enter an order denying the defendant's motion to dismiss the indictment based on destruction of the firearm.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of receipt of a copy of this report and recommendation to file and serve specific objections unless an extension of time for good cause is obtained.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
March 19, 2008